**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**SIDNEY ELLISON**

      **Plaintiff,**

**v.**                                                                 **Case No.: 8:08-CV-419-T-30TGW**

**JOHN H. LOGAN,**

      **Defendant.**

_____/

## MOTION OF DEFENDANT FOR SUMMARY JUDGMENT

Defendant, JOHN H. LOGAN (hereinafter referred to as "Defendant"), by and through his undersigned counsel and pursuant to Rule 56, Federal Rules of Civil Procedure, hereby moves for summary judgment as to all claims of the Complaint on the grounds set forth in the following Supporting Memorandum of Law.

## SUPPORTING MEMORANDUM OF LAW

### I.

### STATEMENT OF MATERIAL FACTS

On March 16, 2006, the Pinellas County Sheriff's Office ("Sheriff's Office") began an investigation into allegations that Sidney L. Ellison ("Plaintiff") had committed the felony offense of Child Abuse. [*See* Affidavit of John H. Logan at ¶4, attached as Exhibit "A"]. It was concluded that probable cause existed to arrest Plaintiff for this offense, however since Plaintiff had fled after the child called the Sheriff's Office an immediate arrest could not be made at the scene. [Logan, ¶4]. It was learned as part of the investigation that Plaintiff had been released just

three months prior from prison, and that he had been incarcerated four of the past five years. [Logan, ¶4]

Deputy John H. Logan ("Logan") became involved in a follow-up investigation during the late night hours of March 17, 2006 at the same residence, when it was reported by Plaintiff's wife that Plaintiff had returned to the residence. [Logan, ¶4-5]. Sergeant Ken Page ("Page") and Deputy Steven Elrod ("Elrod") of the Sheriff's Office were also present at the residence to assist Logan in efforts to arrest Plaintiff based upon the information provided by the original investigating deputy. [Logan, ¶5].

When Sheriff's Office deputies arrived at the residence Plaintiff's wife confirmed that Plaintiff was in the house by himself, and the deputies attempted to make contact with Plaintiff. [Logan, ¶5-6; *See* Affidavit of Kenneth J. Page at ¶4, attached as Exhibit "B"] After Plaintiff refused to answer the door, Plaintiff's wife gave deputies keys and permission to enter the residence. [Logan, ¶6; Page, ¶4-5] Since Plaintiff was uncooperative, a canine team, Elrod and his dog "Jester" responded to assist in the search for Plaintiff. [Page, ¶6; *See* Affidavit of Steven R. Elrod at ¶4, attached as Exhibit "C"]

As the front door of the residence was opened, Elrod gave three verbal orders for Plaintiff to come out of the residence and warned that he would enter with Jester if Plaintiff did not cooperate; Plaintiff ignored the warnings and did not come to the door. [Elrod, ¶6; Logan, ¶6] Elrod entered the residence with Jester on a lead, and did not locate Plaintiff in the living room adjacent to the front door, after they moved from the living room into a small hallway the dog signaled the presence of a person behind a closed door in the hallway. [Logan, ¶6; Elrod, ¶7-8] Plaintiff opened the door slightly, but only enough to show Elrod his hands. [Elrod, ¶8] Based on the confined space of the hallway, the dog and handler moved back to the living room to

make room for Logan to approach the bedroom door to arrest Plaintiff. [Logan, ¶6; Elrod, ¶9; Page, ¶6]

Logan gave several commands to Plaintiff to come out of the bedroom and lay down on the hallway floor, initially Plaintiff did not respond to Logan's orders. [Logan, ¶7; Page, ¶7] Eventually, Plaintiff did lie down on his stomach, but he did not comply with the command to come out of the room and instead positioned himself so that only his head and shoulders were out of the room and in the hallway, the rest of his upper body was in the doorway, his entire lower body remaining in the bedroom. [Logan, ¶7; Page, ¶7; Elrod, ¶11]  Logan gave Plaintiff several more orders to move into the hallway in order to make the arrest and handcuffing safer, but Plaintiff would not comply. [Logan, ¶7-8; Page, ¶7; Elrod, ¶11]  Plaintiff's defiance of Logan's commands and the manner in which he placed his body made it impossible for Logan to handcuff Plaintiff safely if Logan remained in the hallway. [Logan, ¶7-8; Page, ¶8; Elrod, ¶11] Therefore, Logan had to enter the bedroom to position himself behind Plaintiff while securing him in handcuffs. [Logan, ¶8; Page, ¶8; Elrod, ¶11]

Since Plaintiff refused to move, Logan had to get from the hallway into the bedroom by stepping through the doorway and across that area of the floor covered by Plaintiff's body. [Logan, ¶9]  Logan could get no closer to the doorway than where Plaintiff's head lie, and had to step across Plaintiff's body to the next clear space of floor, near Plaintiff's thighs, in the bedroom. [Logan, ¶9]  Logan used his hands to support his weight with the doorframe and lifted himself upward, putting a foot on Plaintiff's buttocks momentarily for balance  as he swung his other foot over Plaintiff's body. [Logan, ¶9; Page, ¶9; Elrod, ¶12]  Plaintiff continued to refuse Logan's efforts to handcuff Logan once he was in the bedroom and would not willingly put his arms behind his back.  [Logan, ¶10; Elrod, ¶12]  Logan forcibly brought Plaintiff's arms behind

his back and handcuffed Plaintiff. [Logan, ¶10; Elrod, ¶12] Logan did not use any additional force on Plaintiff after he was secured in handcuffs, he lead Plaintiff to his Sheriff's Office vehicle and transported Plaintiff to the Pinellas County Jail. [Logan, ¶11; Elrod, ¶13]

Plaintiff was booked into the Pinellas County Jail ("the Jail") as a result of his arrest on March 18, 2006. [*See* Affidavit of Timothy S. Bailey at ¶5, attached as Exhibit "D"] Dr. Timothy Bailey, ("Dr. Bailey") is the medical director of the Jail was responsible for the provision of medical care to Plaintiff while he was held in custody. [Bailey, ¶3,5] On March 21, 2006, Plaintiff received a physical examination and complained of back pain. [Bailey, ¶5] The next day, a series of x-rays were taken of Plaintiff's lumbar spine. [Bailey, ¶6] The radiological findings from the x-rays displayed that Plaintiff suffered from both scoliosis and advanced degenerative disease, both chronic conditions. [Bailey, ¶6,8] No acute injuries, such as fractures, were noted to be present. [Bailey, ¶6] The objective findings revealed by examination and x-rays of Plaintiff in the days immediately following his arrest were not consistent with any acute injury in the last several days. [Bailey, ¶7]

Plaintiff's Amended Complaint (Dkt. #7) brought suit against Logan under 42 U.S.C. §1983, alleging violation of his rights under the Eighth and Fourteenth Amendment. (Amend. Complt. Sec. VI). Logan moved for a more definite statement (Dkt. #15), and the Court denied the motion noting that it appeared Plaintiff sought to bring his action against Logan in his individual capacity. (Dkt. #17)

Plaintiff is currently incarcerated in the custody of the Florida Department of Corrections, at South Bay Correctional Facility, South Bay, Florida.

## II.

## ARGUMENT

### A.      Standard for Summary Judgment

Federal Rule of Civil Procedure 56(b) provides that a defending party may move

for summary judgment on all or part of a claim.  "The judgment sought should be rendered if the

pleadings, the discovery and disclosure materials on file, and any affidavits  show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law." Fed.R.Civ.P. 56(c)  The burden falls to the movant to demonstrate that no genuine issue of

material fact exists by producing evidence outside of the pleadings, and may be discharged by

showing that there is an absence of evidence to support the opposing party's claims.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317 (1986).  When the movant satisfies its burden with a properly

made and supported motion for summary judgment, an opposing party may no longer rely

merely on allegations and denials in its own pleadings, and must respond by showing that there

are genuine issues for trial.  Fed.R.Civ.P. 56(e)(2)  In order to satisfy the obligation to establish

that a genuine issue of material fact exists, the opposing party must present enough evidence to

show that a reasonable jury could find in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, at 248.

The opposing party's evidence must be significantly probative to support the claims.  *Id.*

at 249.  "For factual issues to be considered genuine, they must have a real basis in the record."

*Mize v. Jefferson City Board of Education*, 93 F.3d 739, 742 (11th Cir.1996)  Even where the

parties tell two different stories, where one is blatantly contradicted by the record so that no

reasonable jury could believe it, a court should not adopt that version of the facts for purposes of

ruling on a motion for summary judgment. *Pierre v. Gruler*, 2009 WL 383352, *2 (M.D. Fla.

2009).

The opposing party's evidence must establish the essential elements of the case that must

be proven at trial. *Celotex*, at 322-323. Plaintiff's claims are based upon the alleged excessive

use of force by Deputy Logan during his arrest. However, while the pleadings of a pro se litigant

are to be held to a less stringent standard, the conclusory allegations and unwarranted deductions

of fact are not accepted as true in the pleadings of any litigant. *See Eidson v. Arenas*, 837

F.Supp. 1158 (M.D. Fla. 1993)

Despite the fact-specific nature of this type of controversy, a court may grant summary

judgment if it determines that the evidence, viewed most favorably to the Plaintiff, shows that

the force was reasonable under the circumstances surrounding the arrest. *Caruthers v.*

*McCawley*, 2008 WL 4613048, *4 (M.D. Fla. 2008)

**B.      As a Governmental Actor, John H. Logan is Entitled to the Protection of Qualified
         Immunity**

"[G]overnment officials performing discretionary functions generally are granted a

qualified immunity and are 'shielded from liability for civil damages insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known.'" *Wilson v. Layne*, 526 U.S. 603,614 (1999) (quoting *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982))

The allegations of Plaintiff's Amended Complaint, as well as the affidavits attached as

Exhibits A, B and C to this motion demonstrate that on March 17-18th, 2006 Logan was

employed by the Pinellas County Sheriff's Office as a Deputy Sheriff, and while on duty he

arrested the Plaintiff. In order to establish that he has the right to claim the protections of

6

qualified immunity a defendant must show that he was acting within the scope of his discretionary authority when the injurious conduct occurred. *Rich v. Dollar*, 841 F2d 1558, 1563 (11th Cir.1988)  It is clear that Logan was acting with his discretionary authority as a deputy sheriff and therefore it is established that he is entitled to claim the protections of qualified immunity.  With discretionary authority established, the burden shifts to Plaintiff, who must show that qualified immunity is not appropriate.  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir.2002)

The Plaintiff's burden to demonstrate that qualified immunity does not apply is a difficult one in light of the broad interpretation and application of qualified immunity by both the Supreme Court and the Eleventh Circuit.  In general, qualified immunity is the rule and will only be overcome in exceptional cases.  *See Caruthers*, at \*4-5  "Unless a government agent's act is so obviously wrong in light of the pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Lassiter v. Alabama A&M Univeristy, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir.1994) (*en banc*).

In the context of excessive force claims, qualified immunity protects police officers whose conduct falls in the "hazy border between excessive and acceptable force." *Saucier v. Katz*, 533 U.S. 194, 206 (2001).  In order to overcome this protections, the Plaintiff must establish that Logan violated a constitutional or statutory right and that this right was clearly established at the time of the alleged violation.  *Id*., at 201.

C.       **The Force Used by John H. Logan was Reasonable Under the Circumstances**

Plaintiff's Amended Complaint asserts that his Eighth Amendment and Fourteenth

Amendment rights were violated by Logan's use of excessive force during Plaintiff's arrest.  The

Eighth Amendment prohibits the use of excessive force against those convicted of a crime. *See*

*Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989).  The Fourteenth Amendment protects pretrial

detainees from the use of excessive force. *See Bell v. Wolfish*, 441 U.S. 520,523 (1979)  Since

Plaintiff alleges that he was the victim of excessive force by Logan during his arrest, it does

notappear that he can prevail against Logan for violations of his rights under these two

amendments.  However, in light of courts' practice of liberally construing complaints filed by

pro se plaintiffs, it may be more appropriate for Logan to address these allegations as raising a

claim for a violation of his rights under the Fourth Amendment.  *See GJR Investments, Inc. v.*

*County of Escambia, Fla.*, 132 F.3d 1359, 1369(11th Cir.1998); *Graham v. Connor*, 490 U.S. at

394.

Claims that law enforcement officers used excessive force are to be analyzed under the

Fourth Amendment and its reasonableness standard.  *See Graham v. Connor*, 490 U.S. 386

(1989).  Under this standard, courts measure the reasonableness of the force applied with respect

to the Fourth Amendment by using an objective standard which views events from the

perspective of a reasonable officer on the scene with the attendant facts and circumstances.

*Saucier*, 533 U.S. at 204-205; *Graham v. Connor*, 490 U.S. at 338; *Robinson v. Arrugueta*, 415

F.3d 1252, 1255 (11th Cir.2005).

It is important to note that since this "reasonableness" standard is applied from the perspective of a reasonable officer on the scene, it is implicit that this determination of "reasonableness" is not one that should be judged from the solitude of chambers, with the benefit of time and 20/20 hindsight. *Crosby v. Monroe County*, 394 F.3d 1328, 1333-1334 (11th Cir.2004). In the same regard, while it is clear that the Fourth Amendment guarantees the right to be free from the use of excessive force during the course of an arrest; it is well-recognized that "not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates the Fourth Amendment. *Durruthy v. Pastor*, 351 F.3d 1080, 1093 (11th Cir.2003); *Saucier v. Katz*, 533 U.S. 194, 209 (2001).

The Eleventh Circuit has recognized that under controlling Supreme Court precedent, when an officer lawfully arrests an individual for commission of a crime, the officer is entitled to effectuate a full custodial arrest. *See Lee v. Ferraro*, 284 F.3d 1188, 1196 (11th Cir.2002). The right to make such an arrest incorporates the right to use some degree of physical coercion to complete the arrest. *Saucier*, at 204. In order to establish that a Fourth Amendment violation has occurred, Plaintiff must show that the force used in effectuating the seizure was greater than necessary. *Samarco v. Neumann*, 44 F. Supp. 2d 1276, 1284-1285 (S.D. Fla. 1999). For this reason, the Eleventh Circuit has repeatedly ruled that "the application of de minimis force, without more will not support a claim for excessive force." *Durruthy*, 351 F.3d at 1094-1095.

The record does not contain any basis for concluding that Logan's actions during his arrest of Plaintiff caused any injury to Plaintiff. While Plaintiff had alleged that he has suffered "cracked" vertebrae, these conclusory allegations are not probative evidence of an injury that would contradict the only reasonable conclusion to be drawn, that Logan acted properly and applied de minimis force while arresting Plaintiff.

In the absence of evidence of permanent or sustained injury or damage to a plaintiff, any force used cannot be characterized as excessive under the circumstances. *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir.2004). Therefore, since "[t]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment.", no constitutional violation has occurred. *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir.2000). Moreover, even if the force were not considered de minimis for purposes of this motion, it would still withstand further scrutiny by the Court.

Whether an officer used excessive force during the course of an arrest is based on the evaluation of a number of factors, including: the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of officers or others; and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Lee v. Ferraro*, 284 F.3d 1188, 1197-1198 (11th Cir.2002). Application of these factors to the circumstances surrounding Plaintiff's arrest leads to an indisputable conclusion that Logan acted reasonably during the arrest. Logan and his colleagues were faced with attempting to arrest a suspect believed to have committed Child Abuse, a violent felony offense. Additionally, Plaintiff was known to have been released from prison three months before after a significant period of incarceration. These circumstances show that arrest pertained to a severe crime and the situation was unsafe.

The arrest was further complicated by Plaintiff's efforts to avoid arrest. When law enforcement was first summoned the day before, Plaintiff fled before they arrived. The next day he returned, but when deputies returned around midnight he refused to comply with multiple demands to come to the door of the residence. Plaintiff's refusal to cooperate forced deputies to enter the house to arrest him, creating a situation that clearly presented greater dangers and risks to the deputies. Plaintiff was eventually located by a search dog who detected his presence

behind a closed bedroom door.  Logan approached the bedroom door and gave Plaintiff explicit instructions to leave the room and lie down in the hallway, but Plaintiff did not respond immediately.  When Plaintiff eventually responded, he did not comply by leaving the room and lying down in the hallway – instead he positioned himself in the doorway joining the bedroom to the hallway.  Plaintiff then refused further commands from Logan to move completely into the hallway.  This pattern of evasion, avoidance and refusal to cooperate clearly shows resistance to arrest by Plaintiff, which compounded the risk to Logan and his colleagues.

Under the circumstances, Logan's decision to step briefly on Plantiff's buttocks with one foot while supporting himself with the doorframe was a reasonable option for him to get into a position where he could safely control Plaintiff from behind and handcuff him, despite Plaintiff's refusal to cooperate.  In fact, Plaintiff continued to resist even after Logan was in the bedroom. Logan had to force Plaintiff's arms behind his back to secure the handcuffs, something that would have been difficult, if not impossible, to accomplish if Logan was still in the hallway reaching across the breadth of Plaintiff's body and through the doorway to control his arms.

Plaintiff cannot show that that no reasonable police officer would have acted in the manner Logan did under the circumstances attendant to this arrest.  Therefore, Plaintiff cannot show that Logan violated Plaintiff's Fourth Amendment rights, and consequently cannot overcome Logan's defense of qualified immunity.

**D.**      **Plaintiff Cannot Establish that John H. Logan Violated Clearly Established Law**

"For the law to be clearly established to the point that qualified immunity does not protect a government official, 'pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable

government agent that what defendant is doing violates federal law in the circumstances.'"

*Hudson v. Hall*, 231 F.3d 1289, 1294 (11th Cir.2000) (quoting *Lassiter v. Alabama*, 28 F.3d at

1150).  If Plaintiff cannot demonstrate that at the time of this arrest that Logan's conduct violated

clearly established law, then Logan should not be subject to liability or any further burdens of

litigation.  *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)  Assuming for the purpose of

argument that Plaintiff could establish that Logan violated Plaintiff's constitutional rights,

Plaintiff cannot identify that the clearly established law applicable to this specific factual context

on March 17th, 2006 would have made it clear to Logan, or any other reasonable officer in this

situation, that Logan's conduct went beyond the "hazy border between excessive and acceptable

force" and violated the law.  *Saucier v. Katz*, 533 U.S. at 206.  Therefore Logan is entitled to the

protection of qualified immunity.

**E.      The Prison Litigation Reform Act Bars Plaintiff's Action During His Incarceration**

The Prison Litigation Reform Act ("PLRA") states that "No Federal civil action may be

brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or

emotional injury suffered while in custody without a prior showing of physical injury." 42

U.S.C. § 1997e(e)  In 2000, the Eleventh Circuit reviewed the Congressional History of the

PLRA and the reasons for its enactment.  *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000).

Specifically, in *Harris* the Court sought to determine the point in the litigation that a plaintiff's

status as a prisoner or non-prisoner is determined for purposes of the PLRA's restrictive

covenants.  *Harris*, 216 F.3d at 977.  Ultimately, it was held that a Plaintiff's status is determined

at the time of filing.  *Id*. at 972.  Plaintiff was in custody as of the time of the filing of this action,

and therefore it cannot be brought without the requisite showing of physical injury.

Thus, in light of the restrictive covenants of the PLRA, the lack of physical injury to the Plaintiff as a result of Logan's actions during the arrest acquires additional significance. Beyond the substantive significance to the reasonableness analysis under the Fourth Amendment, it also is fundamentally important to procedural question of whether this action can continue. There has been no probative evidence brought forth during litigation that forms a reasonable basis upon which to conclude Plaintiff has demonstrated he has suffered any physical injury. Therefore, the PLRA prevents Ellison from bringing this action.

Barring this action comports with furtherance of the policy goals of the PLRA. In *Harris*, the court concluded "that the legislative history of the PLRA shows that Congress was concerned with the number of prisoner cases being filed, and its intent behind the legislation was to reduce the number of cases filed, which is why Congress made confinement status at the time of filing the decisive factor." *Harris* at 977. Furthermore, confined prisoners have little to lose by filing frivolous lawsuits. *Id.* ( citing Cong. Rec. at S7498-01, S7526 (daily ed. May 25, 1995) (statement of Sen Kyl) ("Filing frivolous civil rights lawsuits has become a recreational activity for long-term residents of our prisons."))

**III.**

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court enter summary

judgment in Defendant's favor.

Respectfully submitted,

/s/Sherwood S. Coleman
Sherwood S. Coleman
Florida Bar No. 0022632
Pinellas County Sheriff's Office
10750 Ulmerton Road
Largo, FL  33778
Telephone: (727) 582-6274
Telecopier: (727) 582-6459
scoleman@pcsonet.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 2, 2009, I electronically filed the foregoing, and

all exhibits thereto, with the Clerk of the Court by using the CM/ECF system.  I further certify

that I mailed the foregoing documents and the notice of electronic filing by United States mail to

the following non-CM/ECF participant:  Plaintiff, SIDNEY LEE ELLISON, *pro se*, South Bay

Correctional Facility, P.O. Box 7171, South Bay, Florida  33493.

/s/ Sherwood S. Coleman
**Attorney**

14