FILED
09 APR -3 AM 11: 45

In The United States District
Court Middle District of Florida
Tampa Division

Sidney Ellison,
  Plaintiff,
    vs.
John H. Logan,
  Defendant.

Dated: 4/1/2009

Case No.: 808-CV-419-T-30TGW

## Amended Affidavit of Sidney Ellison

State of Florida ]
                    SS:
County of Palm Beach ]

BEFORE ME, the undersigned Authority, personally appeared, Sidney Ellison, who acknowledged the foregoing Affidavit, presented official Florida Department of Corrections Inmate Identification and upon being duly sworn, stated:

1. I am a natural person over the age of 18 years and make this affidavit under oath.

2. I am a state prisoner incarcerated in the Southbay Correctional Facility in Southbay, Florida, a subdivision of the Department of Correction, after having been lawfully convicted on charges of Child Abuse and sentenced to ___ years imprisonment.

3. On March 18, 2006, while sitting in my bedroom talking on my cell phone with a party, someone knocked on my bedroom door. I assumed that it was the police, being aware that my wife had called the police.

4. I got up and went to the bedroom door and looked out, and seeing a Deputy Sheriff with a dog in my living room, I went back in my bedroom and continued my conversation with the party on the phone.

5. Moments later, several Deputy Sheriff's entered the house and my bedroom door was opened, and the Defendant, John H. Logan, ordered me to get off the phone and lay face down on the floor, with my hands out-stretched above my head.

6. I immediately put down the phone and came to where Defendant Logan was standing in my living room, got down on the floor, face down, with both hands out stretched above my head as ordered, offering no resistance to being handcuffed by Defendant Logan, or any of the other Deputies present in the living room.

7. From where I stood in the hallway in front of my bedroom door, and directly in front of Defendant Logan, once I was down on the floor with my hands extended above my head, my hands, head, shoulders, and waist and chest was out in the living room and my legs from my hips down, was were in

The tiny little hallway which was only about two and a half feet (2½) long, and about two and a half feet (2½) wide.

8. Defendant Logan from where he stood in my living room, in front of my head and between my out-stretched arms, purposely jumped into the air and came down feet first in/on my back. He then purposely steped from my back to my buttocks, one foot at a time, before steping to the floor.

9. When I, screamed out in pain, and made an attempt to roll on my side and draw up my legs, "in order to, protect my person," and attempted to reach back to my back, where it hurt most, someone from, among the other deputies present in the living room, shoughted: "Shut up Niggar." They then, as a group, all of the deputies in the living room, began to kick and stomp on my hips, thighs, buttocks and back.

10. After, I had been handcuffed by Defendant Logan, and ordered to get up on my feet, I complained, about not being able to feel my legs,". At that time, I was, again addressed as "Niggar" and ordered to shut up. I was then dragged out of the house by the Deputies, to a Deputy Cruiser and secured.

11. As a proximate results of the actions of Defendant Logan and the other law enforcement, deputies assisting deputy Logan, I suffered nerve damage to my sciatica nerve;

Hip Damage; Cracked Vertebras In My Spinal Column In My back And Can No Longer Walk, Stand, or Sit Comfortable Without Severe Pain, And Has to Rely on Crutches or A Wheel Chair, In order to travel For more Than A Short Distance. I Continues to Receive medication, Naproxen, For Pain, but No other medical treatment For the Injuries Inflicted upon me by Defendant Logan, And other Deputies of the Pinellas County Sheriff's Department.

12. The Actions of Defendant Logan And other Deputies of the Pinellas County Sheriff's Department was Wonton And Without Justification.

13. Defendant's Acts were done Intentionally In Violation of And With deliberate Reckless Indifference to Plaintiff's Constitutional Rights.

14. After My Arrest on march 18, 2006, And My Arrival At the Pinellas County Jail, I Complained To the medical Staff About Pain In My Back. However, Because There were No Physical Sign of Scuff marks or Bruses, It was Determined That Nothing was wrong. However, on march 21, 2006, A Follow up Physical Exam was Conducted, After I Continued to Complain of Back Pain. A Series of XRays were Performed, Which Showed Advanced degenerative disease of the Lumbar Spine And that my Lumbar Vertebrae Exhibited A Congenital deformity In Conjunction With Scoliosis.

15. On or about March 29, 2006, I was released from the Pinellas County Jail on bond, pending trial. On my way home with my wife, we decided to stop at a video store to purchase videos. I got out of the car to accompany my wife in the store, and my legs gave away beneath me, and I had to be taken by ambulance to the Emergency Room at Northside Hospital in Saint Petersburg, Florida where several physical examinations and xrays were taken and performed. The attending physician was known only as Doctor (B), who sent xrays of my injuries to another doctor in Texas by internet, who determined from the medical reports and xrays, that I had suffered nerve damage to my sciatica nerve, hip damage and cracked vertebras in my spinal column in my back.

16. Subsequent to the physical exams and ex-rays conducted at Northside Hospital in Saint Petersburg, Florida, my primary doctor, Doctor Shastri, and Doctor Singh, referred me to Saint Anthony Medical Center in Saint Petersburg, Florida where more xrays, a cat scan, and an M.R.I., was conducted.

17. Subsequent to the treatment at the Saint Anthony Medical Center in Saint Petersburg, Florida, my primary doctors, Doctor Shastri and Doctor Singh, referred me to the Tampa Bay Orthopedic Pain Management Center in St. Petersburg, Florida, where I was again examined, and pain medication was

PRESCRIBED.

18. My primary Doctor's, Doctor Shastri and Doctor Singh, then referred me to the Freese Theropy Center in Saint Petersburg, Florida, where I underwent electro shock and heat treatment, therapy and leg massages.

19. During the month of July, 2006, while still out of jail, on bond, I was re-arrested on new criminal charges.

20. Prior to my arrest in July, of 2006, it was my intentions to file suit against defendant, John H. Logan, and I had requested all of my medical records and files from my primary doctors. In response to my request, the medical records and files were sent to my home address and received by my wife, who informed me upon her last visit with me at the Pinellas County Jail, that she had packed up all of my belongings in the house and had destroyed or donated them to charity, including the medical records and files from my primary doctors, Doctor Shastri and Doctor Singh.

21. On or about March 2, 2009, I finally got in contact with Doctor Shastri, who informed me, that she did not know where Doctor Singh was, and that she believe Doctor Singh had resigned from the practice of medicine. Doctor Shastri advised me to write her a letter requesting what medical records I needed, and that she would provide me with the records she have on file. I am now in the process of

of receiving my medical records and files from Doctor Shastri.

22. In the motion for summary judgment, Defendant, John Logan, alleges that the records filed in this cause of action does not contain any basis to conclude that he caused any injury to the Plaintiff.

23. Contrary to the above, see Affidavit of Defendant, John H. Logan, which was filed in this Honorable Court on February 27, 2009, paragraph 7 – 12 Attached. The record reveal that Defendant Logan stated, under oath, that the Plaintiff, Sidney Ellison, layed down on his stomach with his head and shoulders sticking out into the hall, from the doorway of the bedroom, and that his chest and abdomen were in the doorway itself, and the rest of his body remained out of his, Defendants, reach in the bedroom.

24. Defendant Logan, stated further that it was clear to him that, as long as the Plaintiff remained prone in the bedroom doorway, he, Defendant Logan, would be unable to maintain an advantageous position to react to any unexpected movement by Plaintiff Ellison.

25. Defendant Logan stated further that, in an effort to make the situation safer, by allowing him to get behind the Plaintiff Ellison while handcuffing him, he Defendant Logan, again gave Plaintiff Ellison several commands to move forward into the hallway, but Plaintiff Ellison refused to budge and stayed on the floor in the doorway.

26. Defendant Logan stated that as long as Plaintiff Ellison remained in that position and location, it would be physically impossible for Defendant to stand or kneel near Plaintiff's head in the hallway, balance Defendant's self, while leaning across Plaintiff's torso, holding Plaintiff's arms in place and secure the handcuffs on Plaintiff's wrists. Additionally, Defendant Logan stated that if he had tried to do so, he, the Defendant, would have made himself extremely vulnerable to any attack by Plaintiff Ellison. Therefore, he, Defendant Logan, decided to enter the bedroom, in order to get behind Plaintiff Ellison, which based on his, Defendant Logan's training and experience, provides the most control to the arresting officer, while decreasing the risk of injury.

27. Defendant Logan stated that in order to get into the bedroom, he had to step from where he stood near Ellison's head, all the way through the doorway and onto the bedroom floor near Plaintiff Ellison's thighs.

28. Defendant Logan stated that the top of the doorframe was too low for him to jump over Plaintiff Ellison, so he, Defendant Logan, placed one hand on each side of the door-frame and gripped tightly to lift himself upward, and while supporting his weight using the door frame, he placed his lead foot briefly on Plaintiff Ellison's buttocks for balance, and

then swung his other foot over Plaintiff's body.

29. Defendant Logan stated that once he was in the bedroom, Plaintiff Ellison continued to refuse his commands and would not willingly put his hands/arms behind his back. Defendant Logan stated further that he had to forcibly bring Plaintiff's arms behind his back to handcuff him properly and safely. Defendant Logan stated further that he did not use any other force on Plaintiff once he was secured in handcuffs, and that Plaintiff Ellison did not appear to be in pain or distress, as he, Defendant Logan, took him to his official vehicle, to transport him to the Pinellas County Jail. Defendant Logan stated that he did not jump on Plaintiff's back or kick Plaintiff, and that no one else did, from the time he, Defendant Logan, entered the residence, until he, Defendant Logan delivered Plaintiff Ellison to booking area of the Jail. However,

30. See <u>Deposition of Defendant, John Logan, Filed in the Circuit Court for Pinellas County, Florida Circuit Criminal No. CRC06-05863CFANO-J), on December 29, 2006</u>. The record reveal that Defendant Logan testified on deposition on November 16, 2006, [Page (5) Line (10) Through Page (7) Line (17)], that <u>Deputy Elrod went in and located the Plaintiff in the bedroom, that the Plaintiff was just sitting on a chair talking</u>

on his cell phone and wouldn't respond to Deputy Elrod's commands to come out of the bedroom. He testified that eventually, Plaintiff got up on his own and just walked in the hallway and stood there, then finally got down on the floor. He testified that Plaintiff slede back down in between the door so there was really a tight squeeze.

31. Defendant Logan testified on deposition on November 16, 2006, that he tried to leap over the Plaintiff Sidney Ellison so he could properly handcuff Plaintiff Ellison, and that he just stepped on Plaintiff Ellison's buttocks area to get over him, so that he could get behind Plaintiff Ellison to properly do a safe handcuffing. He testified that he had to get over the Plaintiff to get behind him, and there was just no room for him to get around Plaintiff to get behind him, so he just hopped over him. SEE <u>Deposition of John H. Logan, Pages 5 through Page 7 Attached.</u>

32. Contrary to all of the above, see Plaintiff's Blue-print of the sene of arrest.



33. The Hallway Defendant Logan Speaks of Immediately In Front of Plaintiff's Bedroom door, Is only 2½ Feet wide, And 2½ Feet Long, From The Bathroom door to the Living Room Enterance, where Deputy Logan was Standing In Front of Plaintiff Ellison. Fact is, There is only Enough Room In The Tiny Hallway, For One Person To Stand At A Time.

34. When Plaintiff was Ordered to Come out of The bedRoom And Lay down On The Floor, with both hands Extended Above His head, Plaintiff Simply Opened The door And Steped out in The Tiny Hallway, Turned to Face Deputy Logan, Layed down on His Stomach Face down, With both Hands Extended Above Plaintiff's Head. One Plaintiff was down on the Floor With Hand Extended, Plaintiff's Hands, Head, Chest Area down To His Waist, was out In The Living Room, And His Legs was In The Tiny 2½ Feet by 2½ Feet Hallway. At No Time did Plaintiff Slide back into the bedRoom Or Resist Deputy Logans Efforts to Handcuff Plaintiff.

35. Furthermore, There Was Plenty of Room In The Tiny 2½ Feet Hallway For Deputy Logan to Place His Feet on The Floor of the Hallway, beside the Plaintiff, In order to Get down behind the Plaintiff to Properly Handcuff The Plaintiff. Furthermore, From Where Deputy Logan Stood In The Living Room, He Could Have Ordered the Plaintiff To Roll Over On Plaintiff's back, Sit up on The Hallway Floor, Facing The Bathroom door, With Plaintiff's Hands behind His Back, And Safely And Properly Accomplish The Task Without Incident, Or Without Jumping upon Plaintiff's back Or Even Steping on Plaintiff.

36. Defendant, John H. Logan, in his Motion for Summary Judgment, alleges that as a Government Actor, he is entitled to the protection of Qualified Immunity. See Hafer v. Melo, 112 S.Ct. 358, 116 L.Ed. 2d 301 1991. Public officials do not automatically have immunity from suit when they are sued in their individual capacities.

37. See also, Langley v. Adams County, 987 F.2d 1473, 1477 (10th Cir. 1992). Officials sued in their official capacities cannot raise qualified immunity.

38. Also see Barber v. City of Salmon, 953 F.2d 232, 237 (6th Cir. 1992. In filing a Section 1983 lawsuit against government officials in their official capacities, these individuals may be held liable since they are considered entities themselves.

Further Affiant Sayeth Not.

#_____ #649853
Sidney Ellison #649853

Sworn to and Subscribed before me on this 31st day of March, 2009, by Sidney Ellison who acknowledged the foregoing affidavit, presented official Florida Department of Corrections Inmate Identification as identification and did take an oath.

_____
Notary Public

LILIAN NZURIKE
MY COMMISSION # DD 794672
EXPIRES: June 4, 2012
Bonded Thru Budget Notary Services

My Commission Expires

## Certificate of Service

I hereby certify that on April 1 2009, a copy of the foregoing Affidavit of Sidney Ellison was filed with the Clerk of the United States District Court Middle District of Florida, Tampa Division. I further certify that I mailed the foregoing document, by United States Mail, to Sherwood S. Coleman, Florida Bar No. 0022632, Pinellas County, ~~Sheriff's~~ Office, 10750 Ulmerton Road, Largo, Florida - 33778.

4/1/2009

#649853

Sidney Ellison 649853