UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SIDNEY ELLISON,

   Plaintiff,

v.                                         Case No. 8:08-CV-419-T-30TGW

JOHN H. LOGAN,

   Defendant.
_____/

## ORDER

This case arises out of the events surrounding the arrest of Plaintiff, Sidney Ellison (hereinafter "Plaintiff"). Plaintiff brings this action against Defendant, Deputy John Logan (hereinafter "Defendant"), an officer who arrested Plaintiff. This matter is before the Court on Defendant's Motion for Summary Judgment (Dkt. 42), and Plaintiff's Amended Affidavit in opposition to Defendant's Motion for Summary Judgment (Dkt. 44). A review of the record indicates that, for the following reasons, the Defendant's Motion for Summary Judgment should be DENIED.

**PROCEDURAL BACKGROUND**

On February 29, 2008, Plaintiff filed a Complaint and demand for a jury trial against Defendant in this Court (Dkt. 1). On March 31, 2008, Plaintiff filed an Amended Complaint[1] (Dkt. 7). Plaintiff's Amended Complaint alleged that Defendant, a deputy with the Pinellas

---

[1]Plaintiff declared under penalty of perjury that the facts alleged in his amended complaint are true and correct (Dkt. 7 at 10).

County Sheriff's Department, used excessive force in apprehending him after he had surrendered, in violation of the Eighth and Fourteenth Amendments of the United States Constitution (Id. at 8).[2] Plaintiff filed a 42 U.S.C. 1983 claim against Defendant, in his individual capacity, seeking damages (Id. at 4-10).

On October 18, 2008, Defendant filed his answer and affirmative defenses (Dkt. 18).

Defendant filed a Motion for Summary Judgment and supporting memorandum on March 2, 2009 (Dkt. 42). Defendant submitted the affidavits of Defendant, Deputies Kenneth Page and Steven Elrod, and Dr. Timothy Bailey, in support of his Motion for Summary Judgment (Dkts. 42-2 through 42-5). On March 23, 2009, Plaintiff filed an Affidavit in opposition to Defendant's Motion for Summary Judgment (Dkt. 43). Subsequently, Plaintiff filed an Amended Affidavit in opposition to Defendant's Motion for Summary Judgment on April 3, 2009 (Dkt. 44). On April 10, 2009, Defendant filed a motion to strike Plaintiff's affidavits (Dkt. 45). On May 14, 2009, the Court granted in part and denied in part Defendant's motion to strike (Dkt. 47).

**FACTUAL BACKGROUND**

The following facts are assumed true for the sake of this motion:[3]

---

[2] All claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen are analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Accordingly, Plaintiff's claim will be analyzed under the Fourth Amendment.

[3] The parties' version of the events differ significantly with regard to some aspects of this incident. However, at this stage the Court is obliged to construe the facts in the light most favorable to the Plaintiff. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).

On March 17, 2006, Defendant and Deputies Ken Page ("Page") and Steven Elrod ("Elrod") went to Plaintiff's residence to arrest him following a determination by Deputy Borenstein on the previous night that probable cause existed to arrest Plaintiff for felony child abuse (Dkt. 42-2 at 1-2). The deputies knew that Plaintiff had previously been imprisoned for four years, and had only been released from prison three months prior in December 2005 (Id. at 2). The deputies also knew that on March 16, 2006, Deputy Borenstein was unable to arrest Plaintiff because Plaintiff had fled when the minor child called the Sheriff's office for help (Id.).

While outside Plaintiff's residence on March 17, 2006, Defendant attempted to make contact with Plaintiff, but Plaintiff refused to answer the door (Id.). Plaintiff's wife gave the deputies the key to the front door and permission to enter the residence (Id.). Elrod gave Plaintiff several commands to come to the door, but Plaintiff did not comply (Id.). Elrod entered the residence with his dog to search the residence (Id.). The dog indicated that there was a person behind a closed door that appeared to lead to a bedroom (Id.). Elrod confirmed that there was a person behind the door when Plaintiff opened the door slightly (Id.).

The dog left the hallway and returned to the living room, and Defendant moved down the hallway towards the bedroom (Id.). Defendant ordered Plaintiff to come out of the bedroom and lay down on the floor (Id. at 3). Plaintiff exited the bedroom and laid down on the floor face down with both of his hands outstretched above his head (Dkt. 44 at 2). Plaintiff's body from his waist up extended into the living room, and his body from the waist

3

down was in the hallway just outside of his bedroom (Id. at 2-3).[4]

Defendant then jumped and landed on Plaintiff's back with both of his feet (Id. at 3). Defendant then stepped onto Plaintiff's buttocks before stepping onto the floor (Id.). Plaintiff screamed out in pain and attempted to roll onto his side in order to protect himself (Id.). One of the deputies then shouted "shut up nigger," and all of the deputies began to kick Plaintiff and stomp on his hips, thighs, buttocks and back (Id.).

Defendant then handcuffed Plaintiff (Id.). Defendant ordered Plaintiff to get up on his feet, but Plaintiff complained that he could not feel his legs (Id.). Plaintiff was again called a nigger, was ordered to "shut up," and was dragged out of his house by the deputies and placed in a "deputy cruiser." (Id.).

Plaintiff was taken to Pinellas County Jail (Id. at 4). He told the medical staff there that he was having back pain (Id.). On March 21, 2006, Plaintiff was examined, and during the examination he again complained of back pain (Dkt. 44 at 4; Dkt. 42-5 at 2). There were no observable signs of injury on Plaintiff's body, i.e., marks or bruises. On March 22, 2006, x-rays were taken of Plaintiff's lumbar spine. The x-rays revealed advanced degenerative disease of the lumbar spine and a congenital deformity in conjunction with scoliosis (Id.). The x-rays did not reveal any acute injuries such as fractures (Dkt. 42-5 at 2).

Plaintiff avers in both his sworn Amended Complaint and sworn Amended Affidavit that because of Defendant's use of force during the arrest, he suffered cracked vertebrae, a hip injury, and nerve damage, he can not walk, sit, or stand without pain, he requires

---

[4]Plaintiff avers that the hallway was two and a half feet long and wide (Id. at 3).

crutches, a walker, or a wheelchair to walk more than a short distance, and he continues to receive pain medication for his pain (Dkt. 44 at 3-4; Dkt. 7 at 9).

**STANDARD OF REVIEW**

At the summary judgment stage, the court's role is to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). A granting of summary judgment is appropriate when "'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson*, 477 U.S. 242 at 249. A dispute is genuine if the evidence could lead a reasonable jury to return a verdict for the nonmoving party. *Id.* "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Federal Rule of Civil Procedure 56 permits the plaintiff or the defendant to move for summary judgment. Fed. R. Civ. P. 56. The moving party carries the initial burden of showing no genuine issue of material fact exists. This is done by producing evidence outside of the pleadings. One way the moving party may discharge its burden is by a showing that there is an absence of evidence to support the nonmoving party's case. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party has made and supported its motion, the burden shifts to the nonmoving party to show that a disputed issue

of material fact exists. The nonmoving party's response "'may not rely merely on allegations or denials in its own pleading; rather, its response must… set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact is established when the non-movant has presented enough evidence to show that a reasonable jury could find in its favor. *Anderson*, 477 U.S. 242 at 248.

The plaintiff must produce evidence establishing the essential elements of the case that he must prove at trial. *Celotex*, 477 U.S. 317 at 322-323. Accordingly, where the defendant has moved for summary judgment, the defendant can show that he is entitled to judgment as a matter of law because the existing record contains no evidence to support an essential element of plaintiff's case. *Id*. All evidence and factual inferences drawn from the evidence are viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**DISCUSSION**

Section 1983 of the United States Code allows civil actions against any person who, acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" deprives another of rights guaranteed by federal laws or the Constitution. 42 U.S.C. § 1983. Under this statute, governmental employees can be held liable in their individual and official capacities for any violations of rights they commit. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 665 (1978).

A.  Plaintiff's 42 U.S.C. § 1983 Excessive Force Claim

Plaintiff claims Defendant used excessive force during the course of an arrest. In *Lloyd v. Tassell*, 2009 U.S. App. LEXIS 1531 (11th Cir. Fla. Jan. 27, 2009)(unpublished opinion) the Eleventh Circuit Court of Appeals stated:

> A constitutional excessive force claim based on conduct occurring during the course of an arrest is analyzed on the merits under the Fourth Amendment's "reasonableness" standard. *See Graham v. Connor*, 490 U.S. 386, 394-95, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989). The "inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397, 109 S. Ct. at 1872. In determining whether the use of force was reasonable, factors to consider include: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396, 109 S. Ct. at 1872. We also consider the need for the application of force, the relationship between the need and the amount of force used, and the extent of the injury inflicted. *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002).
>
> "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396, 109 S. Ct. at 1871-72. Accordingly, the use of *de minimis* force, without more, will not support a claim of excessive force. *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).

*Id*. at *4-5.

Accepting Plaintiff's factual account as true, Defendant's use of force weighs in favor of Plaintiff under *Graham* and *Lee*. Plaintiff's crime of felony child abuse may have been "severe." Furthermore, his actions of failing to exit his house or come to his front door when the deputies called for him to do so may have posed an immediate threat to the safety of the

7

officers as they were required to enter Plaintiff's house to search for him. However, the evidence, viewed in the light most favorable to Plaintiff, demonstrates that Plaintiff never resisted arrest or attempted to flee at any time on March 17, 2006. When Defendant jumped onto Plaintiff's back and stepped on Plaintiff's buttocks, Plaintiff was not resisting arrest but lying face down on the floor with his hands and arms extended above his head as he was ordered to do by Defendant (Dkt. 44 at 2-3). When Defendant and the other deputies were kicking and stomping on Plaintiff's hips, thighs, buttocks, and back, Plaintiff was still on the ground screaming in pain because Defendant had jumped on him (Id. at 3). At this time, Plaintiff was not actively resisting arrest or attempting to flee. Furthermore, because Plaintiff was lying on the floor and not resisting arrest, force, other than the force needed to secure Plaintiff in handcuffs, was not necessary.

Additionally, viewing the evidence in the light most favorable to Plaintiff, the force used was scarcely *de minimis*. Furthermore, the *Lee* court explained that "objectively unreasonable force does not become reasonable simply because the fortuity of the circumstances protected the plaintiff from suffering more severe physical harm." 284 F.3d at 1200. Simply because the extent of Plaintiff's injuries from Defendant's use of force is uncertain does not, in itself, render the force used de minimis. *Id.*

In conclusion, viewing the evidence in the light most favorable to Plaintiff, a fact finder could determine that Defendant's conduct was not objectively reasonable under the circumstances. Although Defendant was entitled to use some force when making the arrest, if the fact finder were to believe Plaintiff's version of the events, Defendant's use of force

8

could be found to constitute unreasonable and excessive force under the circumstances. Accordingly, Defendant has adequately demonstrated excessive force in violation of the Fourth Amendment for the purpose of defeating summary judgment.

B. **Qualified Immunity**

Defendant asserts in his motion for summary judgment that he is exempt from civil liability under the doctrine of qualified immunity.[5] However, if the use of excessive force is established, "there is no room for qualified immunity." *Johnson v. Breeden*, 280 F. 1308, 1321 (11th Cir. 2002). As the issue of whether excessive force has been used cannot be determined at this time, the Court cannot grant Defendant qualified immunity. Furthermore, case law provides the necessary precedent clearly establishing the right.[6] *See, e.g., Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008)("Our cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force.")(citations omitted); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (finding that officers used excessive force where witnesses testified that the plaintiff did not struggle or resist the officers in any way and that the officers kicked him in the ribs and beat his head on the ground while the plaintiff was handcuffed); *Smith v. Mattox*, 127 F.3d 1416, 1419-20 (11th

---

[5]Qualified immunity protects municipal officers from liability in § 1983 actions as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[6]"A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right, *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007); (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right, *id.*; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005)." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1292 (11th Cir. Fla. 2009).

Cir. 1997)(officer's conduct was "far beyond the hazy border" and unlawfulness was "readily apparent even without clarifying case law" when the officer, while on the plaintiff's back and handcuffing him, broke plaintiff's arm, which required surgery for multiple fractures, even though plaintiff was not resisting).

### C. 42 U.S.C. § 1997e(e)

In his motion for summary judgment, Defendant argues that because Plaintiff is a prisoner and was in custody when he filed this action, he is barred by 42 U.S.C. § 1997e(e) from bringing this action since he has failed to demonstrate that he suffered any physical injury as a result of Defendant's conduct. § 1997e(e) states "Limitation on recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Eleventh Circuit Court of Appeals has determined that "'custody' should be interpreted in light of its common definition. Accordingly, we find that the PLRA should apply to prisoner lawsuits that claim injuries suffered during custodial episodes, even if such custody occurred outside prison walls." *Napier v. Preslicka*, 314 F.3d 528, 533 (11th Cir. 2002). Because Plaintiff claims he suffered injury during an arrest, he was in "custody," and 42 U.S.C. § 1997e(e) applies to his claim. *Id*.

Nonetheless, even if Plaintiff has not or cannot establish physical injury, "nominal damages may sometimes be appropriate under § 1997(e) [sic]" and "§ 1997(e) [sic] does not preclude a prisoner from seeking nominal damages, if he can establish that he has suffered a constitutional injury." *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007). Plaintiff has

alleged a violation of his rights under the Fourth Amendment, and if he is able to establish a violation he may be able to recover nominal damages, even if he is unable to establish physical injury.[7] Consequently, 42 U.S.C. § 1997e(e) does not bar this action.

ACCORDINGLY, the Court **ORDERS** that Defendant's Motion for Summary Judgment (Dkt. 42) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on May 18, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA:sfc
Copies to: Plaintiff *pro se*
           Counsel of Record

---

[7] Of course, if Plaintiff is unable to establish that he sustained physical injury, 42 U.S.C. § 1997e(e) will preclude an award of compensatory and punitive damages. *Smith v. Allen*, 502 F.3d at 1271.